Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 23 2012, 8:54 am

*Kevin S. Smith*

**CLERK**

of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**JAMES T. ACKLIN**
Chief Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN McCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ROSALIO PEDRAZA, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| vs. ) | No. 49A02-1111-PC-1076 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt Eisgruber, Judge
The Honorable Steven J. Rubick, Magistrate
Cause No. 49G01-0508-PC-139250

**July 23, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Rosalio Pedraza ("Pedraza") appeals the denial of his petition for post conviction relief and argues that the post-conviction court clearly erred in concluding that Pedraza was not denied the effective assistance of counsel during his direct appeal.

We affirm.

## Facts and Procedural History

In its opinion arising out of Pedraza's direct appeal, our supreme court set out the facts underlying Pedraza's convictions as follows:

> Around midnight on August 13, 2005, appellant Rosalio Pedraza drove through a red light at a traffic intersection in front of the White River Gardens in Indianapolis. His SUV struck another vehicle containing five people who had just left a wedding reception. Two of the passengers died; one was seriously injured.
>
> At the scene of the accident, Pedraza appeared confused and had bloodshot, watery eyes. He slurred his speech and smelled strongly of alcohol. Both empty beer cans and full ones lay strewn about the interior of his vehicle. A blood alcohol test revealed Pedraza's blood alcohol content was 0.26. Additional tests revealed cocaine metabolites in his bloodstream. Pedraza later admitted that he had been drinking since the day before and had consumed about fifteen beers that day.

Pedraza v. State, 887 N.E.2d 77, 78-79 (Ind. 2008) (record citations omitted).

At the conclusion of a jury trial, Pedraza was found guilty of the following counts:

Count I: Class C Felony Operating a Motor Vehicle While Intoxicated ("OWI") Causing Death

Count II: Class B Felony Operating a Motor Vehicle with a Blood Alcohol Content ("B.A.C.") Greater than 0.15 Causing Death

Count III: Class C Felony Reckless Homicide

Count IV: Class C Felony OWI Causing Death

Count V: Class B Felony Operating a Motor Vehicle with a B.A.C. Greater than 0.15 Causing Death

Count VI: Class C Felony Reckless Homicide

Count VII: Class D Felony OWI Causing Serious Bodily Injury

Count VIII: Class D Felony Operating a Motor Vehicle with a BAC greater than 0.08 Causing Serious Bodily Injury

Count XIV: Class B Felony Operating a Motor Vehicle with a Metabolite in the Blood Causing Death

Count XV: Class B Felony Operating a Motor Vehicle with a Metabolite in the Blood Causing Death

Count: XVI: Class D Felony Operating a Motor Vehicle with a Metabolite in the Blood Causing Serious Bodily Injury

After the jury returned verdicts on these counts, the trial court heard evidence outside the presence of the jury on the following enhancements:

Count IX: Enhancement of Count I to a Class B Felony due to prior OWI conviction

Count X: Enhancement of Count IV to a Class B Felony due to prior OWI conviction

Count XI: Enhancement of Count VII to a Class C Felony due to prior OWI conviction

Count XII: Enhancement of Count VIII to a Class C Felony Due to prior OWI conviction

Count XIII: Habitual Substance Offender Enhancement

Pedraza admitted to having certain prior OWI convictions supporting the enhancements and habitual offender allegation. Thereafter, the trial court entered judgment of conviction on each of the enhancement counts and adjudged Pedraza a habitual substance

3

offender "based upon the defendant's admissions under oath that the State has met their burden of proof with respect to [the enhancements]." Trial Tr. p. 247.[1]

At Pedraza's August 25, 2006 sentencing hearing, the trial court vacated all of Pedraza's convictions except for those on Counts II, V, and XI, and the habitual substance offender enhancement. Pedraza was sentenced to eighteen years each on Counts II and V, and the sentence on Count II was enhanced by eight years based on the habitual substance offender adjudication. Pedraza was sentenced to another eight years for Count XI, and all sentences were ordered served consecutively, for an aggregate sentence of fifty-two years.

On direct appeal to this court, Pedraza argued (1) that the trial court erroneously entered judgment of conviction on Count XI because it was merely an enhancement of VII, which the trial court had vacated due to double jeopardy concerns, (2) that the trial court erred by using the same prior OWI conviction to elevate Count XI to a Class C felony and as an aggravating circumstance in imposing sentence on that count, (3) that his sentence was inappropriate in light of the nature of the offenses and his character, and (4) that the trial court erred in ordering consecutive, above-advisory sentences. This court affirmed Pedraza's convictions and sentence in all respects.

Pedraza's appellate counsel then filed a petition for transfer, which was ultimately granted by our supreme court. On transfer, Pedraza argued that the trial court improperly

---

[1] We will refer to the transcript of Pedraza's original trial as "Trial Tr." and his Appellant's Appendix in that matter as "Tr. App." We will refer to the transcript of the post-conviction proceedings as "P-CR Tr." and Pedraza's Appellant's Appendix in this matter as "P-CR App."

used the same prior OWI conviction to elevate Count XI to a Class C felony and as an aggravating circumstance in imposing sentence on that count. Our supreme court rejected this argument, but granted Pedraza relief on other grounds not raised by appellate counsel. Specifically, the court noted that in Sweatt v. State, 887 N.E.2d 81 (Ind. 2008), another case handed down the same day as Pedraza, it had held that "where enhancements of separate counts are based on the same prior conviction, ordering these sentences to run consecutively does constitute an improper double enhancement, absent explicit legislative authorization." Pedraza, 887 N.E.2d at 81. In Pedraza's case, the same 2001 OWI conviction had been used to elevate Count XI to a Class C felony and to enhance the sentence on Count II based on Pedraza's habitual substance offender adjudication, and the trial court had ordered the sentences on these counts to run consecutively. Id. Based on its decision in Sweatt, the court directed the trial court "to resentence Pedraza such that the 2001 conviction is not used for both purposes in consecutive sentences." Id. The court summarily affirmed this court's opinion in all other respects. Id.

On remand, the trial court vacated the enhancement in Count XI and reinstated Pedraza's underlying conviction on Count VII. Pedraza was sentenced to three years on Count VII, resulting in a five-year reduction of Pedraza's sentence and an aggregate sentence of forty-seven years.

On June 17, 2008, Pedraza filed a pro se petition for post-conviction relief, which was amended by counsel on October 27, 2010. In his amended petition, Pedraza alleged

that he had been denied the effective assistance of counsel on direct appeal because appellate counsel failed to argue that Pedraza had not knowingly, intelligently, and voluntarily waived his right to a jury trial with respect to the habitual substance offender allegation and the enhancement of Count XI to a Class C felony due to a prior OWI conviction.[2]  The post-conviction court held an evidentiary hearing on Pedraza's amended petition on January 18, 2011.  Pedraza's appellate counsel testified at the hearing and stated that he did not raise the issue of whether Pedraza had waived his right to a jury trial on the enhancements because he believed that Pedraza's admissions concerning his prior OWI convictions were "in the nature of a guilty plea[.]"  P-CR Tr. p. 6.  The post-conviction court entered an order denying Pedraza's petition on November 1, 2011, and Pedraza now appeals.

## Post-Conviction Standard of Review

Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal.  McCary v. State, 761 N.E.2d 389, 391 (Ind. 2002).  Rather, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal.  Davidson v. State, 763 N.E.2d 441, 443 (Ind. 2002).  A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the

---

[2] Pedraza acknowledges that his conviction on Count XI has been vacated due to our supreme court's conclusion that use of the same 2001 OWI conviction to enhance both Count II (due to the habitual substance offender adjudication) and Count XI, and ordering the sentences on those counts to run consecutively, amounted to an impermissible double enhancement.  Pedraza, 887 N.E.2d at 81.  However, Pedraza still challenges his conviction on Count XI because if he is successful in having his habitual substance offender enhancement set aside, the double enhancement problem would be removed and his conviction and sentence on Count XI could presumably be reinstated.

6

evidence. Henley v. State, 881 N.E.2d 639, 643 (Ind. 2008). On appeal from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Id. at 643-44.

Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we do not defer to the court's legal conclusions, but "the findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." Id. at 644.

### Discussion and Decision

On appeal, Pedraza argues that the post-conviction court clearly erred when it concluded that he had not been subjected to ineffective assistance of appellate counsel. We review claims of ineffective assistance of appellate counsel using the same standard applicable to claims of ineffective assistance of trial counsel. Id. Accordingly, to prevail on his claim, Pedraza was required to show both that counsel's performance was deficient and that the deficiency resulted in prejudice. Id.

Deficient performance is "'representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment.'" State v. McManus, 868 N.E.2d 778, 790 (Ind. 2007) (quoting McCary, 761 N.E.2d 761 at 392). Counsel's performance is presumed

7

effective, and a post-conviction petitioner must offer strong and convincing evidence to overcome this presumption. Ben-Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000). In determining whether counsel's performance was deficient, "'[w]e address not what is prudent or appropriate, but only what is constitutionally compelled.'" Burger v. Kemp, 483 U.S. 776, 794 (1987) (quoting United States v. Cronic, 466 U.S. 648, 665 n.38 (1984) (alteration in original)). "Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." Timberlake v. State, 753 N.E.2d 591, 603 (Ind. 2001).

Our supreme court has recognized three types of ineffective assistance of appellate counsel: (1) denial of access to appeal; (2) failure to raise issues that should have been raised; and (3) failure to present issues well. Wrinkles v. State, 749 N.E.2d 1179, 1203 (Ind. 2001). Pedraza's claim falls into the second category. We use a two part test to evaluate such claims: (1) whether the unraised issues are significant and obvious from the face of the record, and (2) whether the unraised issues are "clearly stronger" than the raised issues. Timberlake, 753 N.E.2d at 605-06.

> [T]he reviewing court should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made.

Id. at 605 (quoting Bieghler, 690 N.E.2d at 194) (alteration in original). But even if an omission is inadvertent, relief is not automatic—this is so because "[t]he Sixth

8

Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." Yarborough v. Gentry, 540 U.S. 1, 6 (2003).

On appeal, Pedraza argues that his appellate counsel's performance was deficient because counsel failed to challenge Pedraza's habitual substance offender enhancement, as well as the enhancement of Count XI to a Class C felony, both on the basis that Pedraza did not expressly and personally waive his right to a jury trial on these enhancements. The United States and Indiana Constitutions guarantee the right to a trial by jury, Poore v. State, 681 N.E.2d 204, 206 (Ind. 1997), and that right extends to habitual offender proceedings. Seay v. State, 698 N.E.2d 732, 736037 (Ind. 1998) (holding that a defendant is alleged to be a habitual offender has a right to have a jury determine whether he or she is a habitual offender, "irrespective of the uncontroverted proof of prior felonies"). A defendant is presumed not to waive his right to a jury trial unless he affirmatively acts to do so. Poore, 681 N.E.2d at 207. "The defendant must express his personal desire to waive a jury trial and such a personal desire must be apparent from the court's record." Id. at 206. "Submission to a bench trial with counsel at one's side cannot be deemed a waiver." Zakhi v. State, 560 N.E.2d 683, 685 (Ind. Ct. App. 1990) (citing Perkins v. State, 541 N.E.2d 927, 928 (Ind. 1989)).

Before considering the merits of Pedraza's post-conviction claims, the post-conviction court addressed the threshold issue of whether Pedraza's convictions on the enhancement charges and his habitual substance offender adjudication were the result of a bench trial, which would require a personal waiver on the record by Pedraza, or a guilty

plea, which would not.[3]  The post-conviction court found that what took place was a bench trial, not a guilty plea.  Neither Pedraza nor the State appear to dispute this finding, and based on our supreme court's precedent, we will defer to the post-conviction court's finding in this regard.  See Hopkins v. State, 889 N.E.2d 314, 317 (Ind. 2008) (treating the issue of whether a defendant pleaded guilty to being a habitual offender or merely stipulated to the underlying prior convictions as a factual matter to be resolved by the post-conviction court).  The post-conviction court went on to find that Pedraza had not personally waived his right to a jury as described above.  However, the post-conviction court concluded that Pedraza's appellate counsel was not ineffective for failing to raise the jury waiver issue, both because the failure to raise the issue was "the product of strategy and not negligence[,]" and because the jury waiver issue was not "clearly stronger" than the issues counsel presented on appeal.  Appellant's App. p. 109.

Based on our review of the record, we are convinced that the post-conviction court's finding that appellate counsel made a strategic decision not to raise the jury waiver issue is clearly erroneous.  Specifically, the post-conviction court found that Pedraza's appellate counsel "testified at the hearing that when he reviewed the transcript of the hearing he noticed the procedural irregularity; however, he chose to reject this as an appellate issue because he found other issues more compelling."  P-CR App. p. 109. This finding is not supported by the record; appellate counsel did not testify that he

---

[3] As a general matter, prior to accepting a guilty plea, a trial court must ensure that a defendant was informed of and waived three specific constitutional rights:  the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers.  Hall v. State, 849 N.E.2d 466, 469 (Ind. 2006).  However, the question of whether this requirement applies to "habitual admissions" like the one at issue here has apparently not yet been resolved.  See Hopkins v. State, 889 N.E.2d 314, 317 (Ind. 2008).

believed any sort of "procedural irregularity" had occurred or that he considered raising the jury waiver issue. To the contrary, appellate counsel testified that he did not recognize the possibility of raising the jury waiver issue because he believed that Pedraza's admissions concerning his prior convictions amounted to a guilty plea. Indeed, counsel specifically indicated that he had not "winnowed out" the jury waiver issue in favor of other issues because he had not considered raising the issue in the first instance. This testimony clearly does not support the post-conviction court's finding that appellate counsel made a strategic decision not to raise the jury waiver issue; rather, the only logical conclusion to be drawn from counsel's testimony is that he simply failed to spot the issue.

But this does not end our analysis. Although counsel's failure to raise the jury waiver issue was a result of inadvertence rather than a strategic choice, Pedraza must still establish that the unraised issue was significant, obvious, and clearly stronger than the issues counsel advanced on appeal. See Wrinkles, 749 N.E.2d at 1203. In order to determine whether the jury waiver issue was clearly stronger than the issues raised in Pedraza's direct appeal, we must examine the issues Pedraza's appellate counsel's chose to raise and their probability of success.

Pedraza's appellate counsel made the following arguments on direct appeal: (1) that the trial court erroneously entered judgment of conviction on Count XI because it was merely an enhancement of VII, which the trial court had vacated due to double jeopardy concerns, (2) that the trial court erred by using the same prior OWI conviction

11

to elevate Count XI to a Class C felony and as an aggravating circumstance in imposing sentence on that count,[4] (3) that his sentence was inappropriate in light of the nature of the offenses and his character, and (4) that the trial court abused its discretion in ordering that Pedraza's above-advisory sentences be served consecutively.

The first of these issues had little chance of success on appeal. As this court noted on Pedraza's direct appeal, the charging information for Count XI indicated that Count XI was "Part II of Count VII," and stated that Pedraza was currently charged in Count VII with OWI causing serious bodily injury and that he had a previous OWI conviction within five years of the current offense. Tr. App. p. 48. The court noted further that, in interpreting a trial court's judgment, "'it is critical to take into account the language of the entire order.'" Pedraza, 873 N.E.2d 1083, 1087 (Ind. Ct. App. 2007), summarily aff'd in relevant part, 887 N.E.2d 77, 81 (Ind. 2008) (quoting Gilbert v. Gilbert, 777 N.E.2d 785, 792 (Ind. Ct. App. 2002)). In the end, the court rejected Pedraza's argument in this regard because, despite the fact that the trial court stated that it was vacating the conviction under Count VII, it was clear that the trial court intended to enter judgment of conviction against Pedraza for OWI causing serious bodily injury as enhanced under

---

[4] In its opinion arising out of Pedraza's direct appeal, this court considered an additional, related issue not raised by Pedraza's appellate counsel: whether the trial court's reliance on the same two prior OWI convictions supporting Pedraza's habitual substance offender adjudication as aggravating factors in imposing amounted to an improper double enhancement. The majority ultimately concluded that it did not, and Judge Vaidik concurred in result, concluding that the trial court had abused its discretion in finding as an aggravating circumstance the same convictions supporting Pedraza's habitual substance offender enhancement, but that resentencing was not warranted because the other aggravating circumstances found by the trial court were sufficient to support Pedraza's sentence. Although it was appropriate for the court to consider this issue *sua sponte*, see Comer v. State, 839 N.E.2d 721, 726 (Ind. Ct. App. 2005) (holding that it is a reviewing court's duty to correct sentencing errors, sua sponte if necessary), we will not consider it in determining whether the unraised jury waiver issue was clearly stronger than the issues raised on direct appeal because Pedraza's counsel did not actually raise the issue.

Count XI. Pedraza's argument to the contrary asked this court to resort to a hyper technical reading of each charging information in isolation and to disregard the trial court's clear intent, and was therefore highly unlikely to succeed on appeal.[5]

Pedraza's second argument, that the trial court's use of the same prior OWI conviction that was used to enhance Count XI to a Class C felony as an aggravating circumstance to support the imposition of the maximum sentence Count XI amounted to an impermissible double enhancement, was slightly stronger but still unlikely to succeed. In support of this argument, Pedraza's appellate counsel cited Stone v. State, 727 N.E.2d 33, 37 (Ind. Ct. App. 2000), for the proposition that a trial court may not use a factor constituting a material element of the charged offense as an aggravating circumstance. In imposing sentence on Count XI, the trial court found Pedraza's criminal history, including his 2001 OWI conviction, as an aggravating circumstance, even though that 2001 OWI conviction constituted an element of the offense in that it was used to elevate the crime to a Class C felony. This argument is appealing on its face, but on closer examination, its weaknesses become apparent. First, the general rule that a material

[5] In its opinion arising out Pedraza's direct appeal, this court also addressed the issue of whether the trial court abused its discretion in failing to identify as mitigating circumstances that long-term imprisonment would cause undue hardship to Pedraza's teenage son and the fact that Pedraza did not contemplate the fact that his crime would cause such serious harm. Pedraza v. State, 873 N.E.2d 1083, 1090 (Ind. Ct. App. 2007), summarily aff'd in relevant part, 887 N.E.2d 77, 81 (Ind. 2008). However, it should be noted that Pedraza's appellate counsel did not raise the issue of purportedly overlooked mitigators as a freestanding claim of abuse of discretion. Rather, appellate counsel advanced these additional mitigating circumstances for consideration in the context of whether his sentence was inappropriate under Appellate Rule 7(B). To the extent that Pedraza's appellate counsel argued that the trial court abused its discretion by overlooking these purportedly mitigating circumstances, the argument had virtually no chance of success on the merits because Pedraza's trial counsel had not advanced these considerations as possible mitigating circumstances during Pedraza's sentencing hearing. See id. at 1090 (citing Anglemyer v. State, 868 N.E.2d 482, 492 (Ind. 2007) (holding that "the trial court does not abuse its discretion in failing to consider a mitigating factor that was not raised at sentencing"), clarified on reh'g, 875 N.E.2d 218).

element of a crime may not also serve as an aggravating circumstance justifying a deviation from the presumptive sentence was a product of the previous, presumptive sentencing scheme under which the trial court was required to find aggravating circumstances in order to enhance a sentence. See Anglemyer v. State, 868 N.E.2d 482, 486 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218. But Pedraza was sentenced under the current, advisory sentencing regime, under which trial courts may impose any sentence within the statutory range regardless of the presence or absence of aggravating circumstances. Id. at 488. Indeed, in its opinion arising out of Pedraza's direct appeal, our supreme court held that under the advisory sentencing scheme, it is no longer improper to consider a material element of a crime as an aggravating factor. Pedraza v. State, 887 N.E.2d 77, 80 (Ind. 2008).[6]

And even applying the law applicable to the presumptive sentencing scheme, Pedraza's argument was unlikely to succeed. Although the trial court referenced Pedraza's criminal history, including the 2001 OWI, as an aggravating circumstance in imposing sentence on Count XI, this was not the full extent of Pedraza's criminal history. Pedraza also had a 2003 conviction for OWI as a Class D felony. And the trial court found additional aggravating circumstances aside from Pedraza's criminal history, including the fact that prior attempts at rehabilitation had failed and the nature and circumstances of the crime. Under the presumptive sentencing scheme, it was often said

---

[6] However, the court noted that "a trial court that imposed a maximum sentence, explaining *only* that an element was the reason, would have provided an unconvincing reason that might warrant revision of sentence on appeal." Pedraza, 887 N.E.2d at 80.

14

that a single aggravating factor was sufficient to justify an enhanced sentence. See Hawkins v. State, 748 N.E.2d 362, 363-63 (Ind. 2001). Accordingly, even if the trial court erred in considering Pedraza's 2001 OWI conviction as an aggravating factor, Pedraza was unlikely to prevail on this issue because the trial court found three significant, additional aggravating factors, the propriety of which Pedraza did not contest. See id. at 364 (holding that a sentence enhancement may still be upheld when a sentencing court applies proper aggravators along with improper aggravators).

However, the two remaining issues presented on direct appeal were considerably stronger. First, with respect to Pedraza's argument that his sentence was inappropriate under Appellate Rule 7(B), we strongly disagree with Pedraza's assertion the issue "was a non-starter." Appellant's Br. at 10. Pedraza received eighteen-year sentences for each of his two Class B felony convictions; thus, his sentences on those charges were just two years shy of the statutory maximum for Class B felonies. See Ind. Code § 35-50-2-5. Pedraza received an eight-year sentence on Count XI, the statutory maximum sentence available for a Class C felony. See Ind. Code § 35-50-2-6. Additionally, due to Pedraza's habitual substance offender adjudication, his sentence on one of the Class B felony convictions was enhanced by eight years, the maximum allowed under the applicable statute. See Ind. Code § 35-50-2-10. Finally, all of Pedraza's sentences were ordered to be served consecutively. Thus, Pedraza received an aggregate sentence of fifty-two years, just four years less than the maximum sentence the trial court could have legally imposed.

15

In support of his argument that Pedraza's near-maximum sentence was inappropriate under Appellate Rule 7(B), Pedraza's appellate counsel noted that Pedraza's criminal history was limited; indeed, Pedraza's prior criminal history consisted solely of the two prior OWI convictions used to support his habitual substance offender adjudication. Appellate counsel noted that Pedraza had never committed a crime of violence, and argued that Pedraza has committed his past and current drunk driving offenses because he was "a hopeless drunk." P-CR Ex. Vol., Petitioner's Ex. 1, p. 13. Appellate counsel also asked this court to consider the fact that Pedraza had a fourteen-year-old son and that Pedraza had not intentionally harmed his victims. Pedraza's appellate counsel acknowledged that the results of Pedraza's choice to drive while under the influence in this case were horrific and that his impact on the victims and survivors was profound, but asked this court to review his sentence objectively, "with a cold eye toward proportionality and fundamental fairness." Id. at 14.

Although Pedraza's Appellate Rule 7(B) argument was ultimately unsuccessful, it is clear from this court's opinion arising out of Pedraza's direct appeal that the argument gave this court pause. See Pedraza, 873 N.E.2d at 1090-92, summarily aff'd in relevant part, 887 N.E.2d 77, 81 (Ind. 2008). With respect to the nature of the offense, the court took particular care to note that the impact on the victims and their families alone might not be enough to justify Pedraza's near-maximum sentence, but that other circumstances exacerbated the seriousness of the crime, including the fact that Pedraza's B.A.C. was

16

over three times the legal limit, that he had cocaine in his system, and that he was driving erratically at the time of the accident. Id. at 1091-92.

With respect to Pedraza's character, the court noted that his criminal history was not extensive, but that he had an arrest record for additional traffic and alcohol-related charges that were ultimately dismissed and that the State had previously filed (and subsequently withdrawn) a petition to revoke Pedraza's probation on one of his previous OWI conviction. Id. at 1092. The court concluded that these facts indicated that Pedraza "had been given breaks in the past" and that he was "neither rehabilitated nor deterred from illegal activity[.]" Id. Although appellate counsel's argument that Pedraza's sentence was inappropriate under Appellate Rule 7(B) did not ultimately prevail, this court's careful and detailed analysis of the issue reveals that the court found the argument colorable.

Appellate counsel's final argument, that the trial court erred by imposing consecutive, above-advisory sentences, was very strong at the time it was made. Specifically, Pedraza's appellate counsel argued that under Indiana Code section 35-50-2-1.3, the trial court was prohibited from imposing an above-advisory sentence for any sentence running consecutively. In support of this argument, Pedraza cited Robertson v. State, 860 N.E.2d 621, 624 (Ind. Ct. App. 2007), vacated in relevant part, 871 N.E.2d 280 (Ind. 2007), in which this court reached precisely that conclusion. Pedraza makes much of the fact that that another panel of this court had previously reached the opposite conclusion, see White v. State, 849 N.E.2d 735, 741-43 (Ind. Ct. App. 2006), but the

17

existence of conflicting authority on an issue does not undermine the legal basis for the argument. Indeed, counsel should be ever more aware of a possible issue where the law is unsettled and in a state of flux. See Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004) (holding that an issue was both significant and obvious, as well as stronger than the other issues raised by appellate counsel on direct appeal, "precisely because the law in this area was unsettled and in a state of flux").

Our supreme court granted transfer in Robertson on April 17, 2007, more than two months after Pedraza's appellate counsel filed his Appellant's Brief, and the court handed down its opinion in that case on August 8, 2007, several months before this court handed down its opinion arising out of Pedraza's direct appeal. In Robertson, our supreme court ultimately held that Indiana Code section 35-50-2-1.3 did not set forth a general requirement that a consecutive sentence be for the advisory term. Robertson v. State, 871 N.E.2d 280, 285 (Ind. 2007). Rather, the court held that the statute only required the trial court to use the advisory sentence in imposing a consecutive or additional term when: (1) imposing consecutive sentences for nonviolent felony convictions arising out of a single episode of criminal conduct under Indiana Code section 35-50-1-2, (2) when imposing an additional fixed term to a habitual offender under Indiana Code section 35-50-2-8, and (3) when imposing an additional fixed term to a repeat sexual offender under Indiana Code section 35-50-2-13. Id.

Accordingly, because Pedraza's crimes did not fall into any of these three categories, this court held that the trial court was not required to impose the advisory

18

sentence when sentencing Pedraza to consecutive terms. Pedraza, 873 N.E.2d at 1093; see also Ind. Code § 35-50-1-2 (defining OWI causing death and OWI causing serious bodily injury as crimes of violence). But the fact that our supreme court granted transfer and ultimately settled the consecutive sentencing issue against Pedraza during the pendency of Pedraza's direct appeal does not make the issue any weaker at the time it was raised. See State v. Moore, 678 N.E.2d 1258, 1261 (Ind. 1997) ("Counsel's conduct is assessed based on facts known at the time and not through hindsight.").

Thus, at least two of the issues raised by Pedraza's appellate counsel had considerable merit. The post-conviction court found that the jury waiver issue was not clearly stronger than the issues raised on direct appeal because "there would have been little benefit to be gained from success on the issue." Appellant's App. p. 109-10. Specifically, the post-conviction found that even if the jury waiver issue had been raised and decided in Pedraza's favor, Pedraza's remedy would have been a retrial on the enhancement counts and habitual substance offender allegation. The post-conviction court noted further that Pedraza had stipulated to the existence and timing of each of his relevant prior convictions and that, had he been retried, "there would have been no legitimately controverted issues and [Pedraza's] conviction on the enhancements would have been a certainty." Id. at 110.

Although Pedraza correctly notes that if he were granted a retrial, he would not be required to again stipulate to the existence of his underlying convictions, he does not dispute that he has the requisite convictions to support the enhancement counts and the

habitual substance offender adjudication. We acknowledge that, even where there is uncontroverted proof that a defendant has the requisite prior convictions, "the jury still has the unquestioned right to refuse to find the defendant to be a habitual offender at law." Seay, 698 N.E.2d at 734. But the possibility that a jury might decline to find Pedraza to be a habitual substance offender notwithstanding his qualifying prior convictions does not establish that the jury waiver issue was *clearly* stronger than the other issues raised on appeal when, in all likelihood, a retrial would have resulted in another habitual substance offender adjudication.

In sum, we conclude that Pedraza's appellate counsel raised at least two issues that were quite strong, although ultimately unsuccessful. The jury waiver issue also had merit, and it would have been prudent for counsel to raise it. But as we explained above, in assessing counsel's performance, "'[w]e address not what is prudent or appropriate, but only what is constitutionally compelled.'" Burger v. Kemp, 483 U.S. 776, 794 (1987) (quoting United States v. Cronic, 466 U.S. 648, 665 n.38 (1984) (alteration in original)). And Pedraza's burden on appeal is substantial—we must affirm the post-conviction court's denial of relief unless "the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion." McCary, 761 N.E.2d at 392. Pedraza has simply not met this burden with respect to establishing that the unraised jury waiver issue was clearly stronger than the other issues raised on appeal. This is particularly true in light of the fact that is was unlikely that Pedraza would have ultimately gained any benefit from success on the issue, and success on either

of the strongest issues raised on direct appeal would have resulted in a net decrease in Pedraza's sentence. We therefore cannot conclude that appellate counsel's performance was constitutionally deficient and, accordingly, we affirm the post-conviction court's conclusion that Pedraza was not denied the effective assistance of counsel during his direct appeal.

Affirmed.

CRONE, J., and BRADFORD, J., concur.